**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DOMINIQUE THOMPSON, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  21-3568 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                    June 15, 2022

Dominique Thompson ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has replied.  For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

## I.     PROCEDURAL HISTORY[1]

On June 25, 2019, Plaintiff applied for DIB and SSI, alleging disability, based upon physical and mental health impairments, that commenced on June 5, 2019.  R. 220.  The claim was denied, initially and upon reconsideration; therefore, Plaintiff requested a hearing.  *Id.*  On September 14, 2020, because of COVID restrictions, Plaintiff had a telephonic administrative hearing before Jessica Marie Johnson, Administrative Law Judge ("the ALJ").  *Id.*  Plaintiff,

---

[1] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Statement of Issues and Brief in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

represented by an attorney, and Gerald Keating, a vocational expert, ("the VE") testified at that hearing. *Id.* On November 12, 2020, the ALJ, using the sequential evaluation process for disability, issued an unfavorable decision.[2] R. 220-33. The Social Security Administration's Appeals Council denied Plaintiff's request for review, on June 8, 2021, making the ALJ's findings the final determination of the Commissioner. R. 1-3. Plaintiff seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.    FACTUAL BACKGROUND

A.   Personal History

Plaintiff, born on May 9, 1993, R. 32, was 27 years old on the date of the administrative hearing. She has a high school education, R. 246, and lives with her grandmother, next door to her parents. R. 245. Plaintiff last worked in June 2019, when she suffered a cerebral arterial aneurysm, which required surgical intervention.

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

B.      Plaintiff's Testimony

At the September 14, 2020 administrative hearing, Plaintiff described her limitations. Plaintiff explained that, after her June 2019 aneurysm, she has not driven a car, has difficulty reading, because she forgets what she has read, and experiences difficulty counting money. R. 246-48. She initially characterized her primary problem as impaired short and long term memory. R. 251. Plaintiff's memory is so poor that she relies on her father to remind her to take her medication and to keep track of medical appointments. R. 256-57.

Plaintiff testified that she suffers migraine headaches almost every day of the week; they last from four to five hours. R. 252-53. To relieve them, she lies down with a cold compress on her forehead. R. 253. According to Plaintiff, bending down or squatting make her dizzy; dizziness can trigger a migraine headache. R. 254. Bright lights, being angry, being in the heat, or being exhausted can also cause a migraine headache. R. 260. Plaintiff identified a myriad of additional problems: mood swings, anger, frustration, anxiety, depression, difficulty concentrating, constant fatigue, and inability to focus on a task for more than an hour before triggering a migraine. R. 253.

Plaintiff has difficulty getting along with people. R. 254-55. She bickers with them and, if someone asks her to recall information she cannot remember, she becomes angry rather than admit the lack of memory. R. 258-59. Plaintiff sometimes gets so angry that she stops talking, "shuts down," and isolates herself; her self-isolation occurs approximately five times a week and has lasted for up to five hours at a time. R. 259. To treat her mental health, Plaintiff sees a psychologist every two weeks; she is not sure it is helping; poor memory means she quickly forgets most of what she and the psychologist discussed in a treatment session. R. 253.

Plaintiff stated she is able to walk for two blocks, before a need to rest. R. 253. She estimated that she can lift and carry no more than five pounds. R. 254.

C.    Vocational Testimony

The VE characterized Plaintiff's past jobs as follows:  stock clerk was heavy[3] and semi-skilled[4]; airline security was light[5] and unskilled[6]; bus driver was medium[7], semi-skilled; and nursing assistant was medium and semi-skilled.  R. 262-63.  The ALJ asked the VE to consider a person of the Plaintiff's age, education, work experience, who was capable of performing light work, with the following limitations:  never able to climb ladders, ropes, or scaffolds; frequently able to climb ramps or stairs; frequently able to balance, stoop, crouch, kneel, crawl; able to tolerate occasional exposure to weather, extreme cold and hot temperatures, wetness, humidity; able to tolerate occasional exposure to pulmonary irritants such as fumes, odors, dust, gases; unable to tolerate exposure to dangerous machinery, unprotected heights; limited to work involving simple, routine, and repetitive tasks with only occasional, simple decision-making required and occasional, routine changes in the work environment; able to tolerate occasional interaction with supervisors and coworkers; unable to tolerate any contact with the public.  R. 264.  The VE responded that this person could not perform any of Plaintiff's past work.  R. 264.  However, the person could perform the following, unskilled jobs:  (1) mail sorter (75,000 positions in the national economy); (2) assembler (100,000 positions in the national economy); and (3) produce sorter (39,000 positions in the national economy).  R. 264-65.  The VE stated that employers would not tolerate more than

---

[3]"Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. §§ 404.1567(d), 416.967(d).
[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. §§ 404.1568(b), 416.968(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).
[6]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. §§ 404.1568(a), 416.968(a).
[7]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

one absence per month.  R. 265.  Also, if a person was off-task for 30 minutes to an hour each workday, that would preclude all work.  R. 265-66.

In response to questions from Plaintiff's attorney, the VE testified that a person who could not concentrate in two hour segments could not work.  R. 266.  Finally, if a person needed an unreasonable number of breaks or rest periods, they could not sustain employment.  R. 266.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security  Act through December 31, 2024.

2.    [Plaintiff] has not engaged in substantial gainful activity since June 5, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     [Plaintiff] has the following severe impairments: cerebral arterial aneurysm, a cardiac murmur, asthma, a major depressive disorder, and an adjustment disorder with anxiety (20 CFR 404.1521(c) and 416.920(c)).

4.    [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she could never climb ladders, ropes, or scaffolds; frequently climb ramps or stairs; frequently balance, stoop, crouch, kneel, crawl.  She could have occasional exposure to weather, extreme cold and hot temperatures, wetness, humidity; occasional exposure to pulmonary irritants such as fumes, odors, dust, gases; no exposure to dangerous machinery, unprotected heights.  She would be limited to work involving simple, routine, and repetitive tasks with only occasional simple decision making required  and  occasional  routine  changes  in  the  work

5

environment.  She could have occasional interaction with supervisors and coworkers; no contact with the public.

6.      [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      [Plaintiff] was born on May 9, 1993 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not an issue because using the Medical Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     [Plaintiff] has not been under a disability, as defined in the Social Security Act, from June 5, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 222-23, 226, 231-33.

## IV.   DISCUSSION

A.      <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted).  While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance.  *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).  Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987).  Indeed, the court is not permitted to weigh the record evidence itself.  *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).  By contrast, the Commissioner's legal conclusions are subject to *de novo* review.  *Poulos*, 474 F.3d at 91.

B.     Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy."  *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments.  *Heckler*, 461 U.S. at 460.  Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past

employment.  *See Brown*, 845 F.2d at 1214.  If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity.  *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos*, 474 F.3d at 92.

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform any of her past relevant work, she could perform other light jobs that exist in the national economy and, hence, was not disabled.  R. 220-33.  Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by:  (1) failing to provide adequate explanation for discounting the opinions of her treating psychologist, Dr. McGalliard; (2) failing to include limitations caused by migraines in the residual functional capacity ("RFC") assessment; (3) disregarding the disability opinion of her treating neurosurgeon, Dr. Jabbour; and (4) failing to include all of her credibly established impairments in the RFC.  Pl. Br. at 6-21.  Plaintiff also argues that the statute providing for the appointment of former Commissioner Saul violates federal constitutional separation of power principles and should result in a remand.  *Id.* at 4-6.  The Commissioner denies Plaintiff's assertions.  Resp. at 2-19.  This court finds Plaintiff's second argument has merit and requires a remand; this error also affects her fourth claimed error.  Hence, the court need not address her constitutional argument.[8]

1.    The ALJ Properly Considered Dr. McGalliard's Opinions

Plaintiff maintains that the ALJ erred because she failed to provide a proper explanation for discounting Dr. McGalliard's opinions concerning her mental functioning.  Pl. Br. at 6-16.  The

---

[8] Plaintiff agrees that, if any of her non-constitutional arguments prevail, this court need not address her constitutional argument.  Reply at 16.

court rejects this argument.

Dr. McGalliard, Plaintiff's treating psychologist, prepared a medical source statement on August 30, 2020.  R. 833-35.   He opined that Plaintiff was seriously limited, or worse, in the majority of the mental abilities and aptitudes needed to perform work.  R. 833.  He also opined that Plaintiff would regularly miss more than three days of work per month.  R. 834.  The latter restriction is work-preclusive, per the VE.  R. 265.  The ALJ acknowledged the opinions in Dr. McGalliard's medical source statement, but rejected them because they were presented in a checklist format which did not identify record support and they were inconsistent with his own treatment notes as well as those of other sources; also, the doctor's treatment of Plaintiff, which started on July 1, 2020, *see* R. 815, was of short duration.  R. 230.

The ALJ's explanation was sufficient.  First, under the governing regulations, the ALJ was not required to even mention Dr. McGalliard's opinions, regarding Plaintiff's RFC and ability to sustain work.  20 C.F.R. §§ 404.1520b(c)(3)(i), (v), 416.920b(c)(3)(i), (v).  Furthermore, since Dr. McGalliard's opinions were presented in a checklist format, it was permissible to regard them as weak evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993).  Finally, the ALJ correctly noted that Dr. McGalliard's treatment history with Plaintiff was brief, a relevant factor when considering a medical source's opinions.  20 C.F.R. §§ 404.1520c(c)(3)(i), 416.920c(c)(3)(i).  Since the ALJ gave more consideration to Dr. McGalliard's extreme and disabling opinions than she was obliged to, there is no basis to find that the ALJ provided insufficient reasons to discount those opinions.

2.   The ALJ Reversibly Erred when she Failed to Account for Plaintiff's Migraines

Plaintiff complains that the ALJ erred because she did not include any migraine-related limitations in her RFC assessment.  Pl. Br. at 16-18.  This claim has merit.

Plaintiff testified that, despite medication, she experiences headaches most days of the week; they last for 4-5 hours and required her to lie down with cold compresses for relief. R. 252-53. The ALJ acknowledged Plaintiff's testimony about her headaches, R. 227, but declined to accept Plaintiff's testimony about the extent of her limitations, because she believed the testimony was not entirely consistent with the medical and other evidence in the record. R. 227. As explained below, this conclusion lacks support in the evidence the ALJ identified.

The ALJ reviewed Plaintiff's medical records concerning migraines and cited records which corroborate Plaintiff's testimony. First, in her post-operative August 2019 follow-up with Dr. Jabbour, her neurosurgeon, Plaintiff complained of recurrent headaches. R. 228. When Dr. Jabbour next saw Plaintiff in January 2020, he noted that her neurologic condition was unchanged, R. 228; this implies that she still had recurrent headaches. Next, Dr. Jabbour referred Plaintiff to Dr. Rehman, a neurologist. R. 228. When she presented to Dr. Rehman in June 2020, Plaintiff reported ongoing headaches. R. 228. Dr. Rehman prescribed medication to attempt to prevent the headaches. R. 229. Yet, when Plaintiff returned to Dr. Rehman in September 2020 – the month of the administrative hearing – she reported daily migraine headaches, despite multiple medication adjustments. R. 229. Dr. Rehman noted that, with medication, the headaches seemed to last only 1-2 hours. R. 229. The ALJ also mentioned that Plaintiff continued to treat with her primary care physician, Dr. Testa, over the years; Dr. Testa's treatment notes indicate Plaintiff suffered headaches. R. 229. The ALJ did not cite any other evidence that concerned Plaintiff's headaches.

All of the medical evidence the ALJ cited corroborates Plaintiff's testimony that she continues to suffer migraine headaches most days of the week. The only notation that does not fully corroborate her testimony is Dr. Rehman's September 2020 observation that medication seemed to lessen the duration of Plaintiff's headaches somewhat; however, he did not mention any

10

decrease in their frequency.  Faced with this evidence, the court must conclude that the ALJ erred by misunderstanding the evidence.  *See Mason*, 994 F.2d at 1066 (noting that the ALJ cannot reject evidence for an incorrect reason).  Contrary to her conclusion, the medical evidence is consistent with Plaintiff's testimony that she experiences debilitating migraine headaches almost every day of the week.  Even Dr. Rehman's observation that medication was shortening the duration of Plaintiff's headaches to 1 to 2 hours, would still be disabling, per the VE's testimony.  *See* R. 265-66 (explaining that being off-task from 30 minutes to an hour each day would preclude all work).  This court must consider only the explanation the ALJ provides and may not search the record for evidence which might support her conclusion.  *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (citing *S.E.C. v. Chenery*, 318 U.S. 80, 87 (1943)).  Furthermore, since the ALJ's explanation is erroneous and the error effects the disability determination, the error is not harmless, *see Rutherford*, 399 F.3d at 553.  Hence, this case should be remanded so that the ALJ can re-consider Plaintiff's testimony about the frequency and duration of her migraines.  If the ALJ cannot find competent evidence to discredit this testimony, it would seem, per the VE's testimony, R. 265-66, that Plaintiff is disabled.

3.    The ALJ Properly Ignored Dr. Jabbour's Disability Opinion

Plaintiff complains that the ALJ reversibly erred when she ignored Dr. Jabbour's July 24, 2019 opinion that she would not be able to work until at least June 2020.  Pl. Br. at 18-19.  This claim lacks merit.

A treating source's opinion that a claimant is disabled concerns a matter reserved to the Commissioner.  20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).  As such, it is considered to be neither valuable nor persuasive and no analysis need be provided about how such evidence was considered in the disability determination.  *Id.*, §§ 404.1520b(c), 416.920b(c).  Under the

11

governing regulations, the ALJ was not supposed to describe how, if it all, she considered Dr. Jabbour's June 2020 opinion.  Since the ALJ complied with the regulations, there is no basis to find error.

       4.    <u>The ALJ's RFC Determination is Erroneous</u>

Finally, Plaintiff contends that the ALJ's RFC determination was defective, because she did not include limitations found by Dr. McGalliard.  Pl. Br. at 20.  As noted above, the ALJ provided adequate explanation for discounting this doctor's opinions.  However, the ALJ's error concerning Plaintiff's migraines does impact her RFC and, ultimately, whether Plaintiff is disabled.  Hence, upon remand, the ALJ shall reconsider Plaintiff's RFC in accordance with this opinion.

An implementing Order and Order of Judgment follow.